# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| **MONICA PEREZ**, Individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**X TEAM INTERNATIONAL, INC., X TEAM, INC., SAYERS SERVICES LLC, SAYWARE ENTERPRISES, LLC, DON HUDSON, TAMMI HUDSON and DANIEL SAYERS,**<br><br>*Defendants*. | Civil Action No. __5:22-cv-00045__<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

Plaintiff Monica Perez ("Plaintiff" or "Perez") brings this action individually and on behalf of all others similarly situated (hereinafter "Plaintiff and the Putative Class Members" or "Plaintiff and the FLSA Collective Members") who worked for X Team International, Inc. f/k/a Wildlife X Team International, Inc. ("X Team International"), X Team, Inc. f/k/a Wildlife X Team, Inc. ("X Team"),[1] Sayers Services LLC ("Sayers Services"),[2] Sayware Enterprises, LLC ("Sayware Enterprises"), Don Hudson ("D. Hudson"), Tammi Hudson ("T. Hudson"), and Daniel Sayers ("Sayers") (collectively, "Defendants"), at any time during the last three years through the final disposition of this matter seeking all available relief, including overtime compensation, liquidated damages, attorneys' fees, costs,

---

[1] Defendants X Team International, Inc. f/k/a Wildlife X Team International, Inc., and X Team, Inc. f/k/a Wildlife X Team, Inc., are together referred to herein as "Wildlife X Team."

[2] Upon information and belief Daniel Sayers owns and operates Wildlife X Team franchises through his entities Sayers Services LLC and/or Sayware Enterprises, LLC, which are doing business as Wildlife X Team Greater San Antonio, Wildlife X Team Houston, and Wildlife X Team Austin.

and other damages allowed by law, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*

Plaintiff's FLSA claims are asserted as a collective action under Section 16(b) of the FLSA. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

# I.
# OVERVIEW

1. This is a collective action to recover unpaid overtime wages, liquidated damages, and other applicable penalties brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

2. Plaintiff and the Putative Class Members are those similarly situated persons who worked for Defendants anywhere in the United States, at any time during the last three years through the final disposition of this matter, and were paid a day rate, but were not paid any overtime in violation of the FLSA.

3. Specifically, Defendants have enforced a uniform company-wide policy wherein it improperly classified (and continues to classify) its day rate employees—Plaintiff and the Putative Class Members—as exempt from overtime.

4. Although Plaintiff and the Putative Class Members routinely worked (and continue to work) in excess of forty (40) hours per workweek, Plaintiff and the Putative Class Members have not been paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

5. The decision by Defendants not to pay overtime compensation to Plaintiff and the Putative Class Members was neither reasonable nor done in good faith.

6. Defendants knowingly and deliberately failed to compensate Plaintiff and the Putative Class Members overtime of at least one and on-half their regular rates for all hours worked in excess of forty (40) hours each workweek.

7. Plaintiff and the Putative Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA.

8. Plaintiff and the Putative Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b.

9. Plaintiff prays that all similarly situated workers (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

## II.
## THE PARTIES

10. Plaintiff Monica Perez ("Perez") was employed by Defendants within the relevant time period. Plaintiff Perez did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek.[3]

11. The FLSA Collective Members are those current and former employees who worked for Defendants anywhere in the United States, at any time in the past three years through the final disposition of this matter, and were subject to the same illegal pay system under which Plaintiff Perez worked and was paid.

12. Defendant X Team International, Inc. f/k/a Wildlife X Team International, Inc. ("X Team International") is a domestic corporation, licensed to and doing business in Texas, and may be

---

[3] The written consent of Monica Perez is hereby attached as Exhibit "A."

served with process through its registered agent: **Mayfield Document Services LLC, 5850 Granite Parkway, Ste. 215, Plano, Texas 75024.**

13. Defendant X Team, Inc. f/k/a Wildlife X Team, Inc. ("X Team") is a domestic corporation, licensed to and doing business in Texas, and may be served with process through its registered agent: **Tammi Hudson, 1128 Oak Dr., Keller, Texas 76248.**

14. Defendant Sayers Services LLC ("Sayers Services") is a domestic limited liability company, licensed to and doing business in Texas, and may be served with process through its registered agent: **Daniel Sayers, 8623 N New Braunfels Ave., San Antonio, Texas 78217.**

15. Defendant Sayware Enterprises, LLC ("Sayware Enterprises") is a domestic limited liability company, licensed to and doing business in Texas, and may be served with process through its registered agent: **Daniel Sayers, 8623 N New Braunfels Ave., San Antonio, Texas 78217.**

16. Defendant Don Hudson ("D. Hudson") is listed the Owner, President, Director, and CEO of X Team International and the Owner, Director, and CEO of X Team. Defendant D. Hudson is an employer as defined by 29 U.S.C. § 203(d). Defendant D. Hudson employed and/or jointly employed Plaintiff and the Putative Class Members. Defendant D. Hudson may be served with process at: **1128 Oak Dr., Keller, Texas 76248, or wherever he may be found.**

17. Defendant Tammi Hudson ("T. Hudson") is listed as the Owner, Director, and Secretary of X Team International and the Owner, President, Director, and CEO of X Team. Defendant T. Hudson is an employer as defined by 29 U.S.C. § 203(d). Defendant T. Hudson employed and/or jointly employed Plaintiff and the Putative Class Members. Defendant T. Hudson may be served with process at: **1128 Oak Dr., Keller, Texas 76248, or wherever she may be found.**

18. Defendant Daniel Sayers ("Sayers"), Defendant Sayers is the Owner, Manager, and Member of Sayers Services and Sayware Enterprises. Defendant Sayers is an employer as defined by 29 U.S.C. § 203(d). Defendant Sayers employed and/or jointly employed Plaintiff and the Putative

Class Members. Defendant Sayers may be served with process at: **8623 N New Braunfels Ave., San Antonio, Texas 78217, or wherever he may be found.**

19. Defendants are joint employers pursuant to 29 C.F.R. § 791.2. They have common ownership, oversight, and control over Wildlife X Team and Plaintiff and the Putative Class Members. As a result, all Defendants are responsible, both individually and jointly, for compliance with all applicable provisions of the FLSA, including the overtime provisions, with respect to the entire employment for the workweeks at issue in this case.

## III.
## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201–19.

21. This Court has personal jurisdiction over Defendants because the cause of action arose within this District and Division as a result of Defendants' conduct within this District and Division.

22. Venue is proper in the Western District of Texas because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

23. Specifically, Defendants have a working presence throughout the State of Texas (and the United States), and Plaintiff Perez worked in San Antonio, Texas throughout her employment with Defendants, all of which is located within this District and Division.

24. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391.

## IV.
## ADDITIONAL FACTS

25. Defendants X Team and X Team International (together "Wildlife X Team") operate a national urban wildlife control business that operates through corporate owned facilities and franchises.[4]

---

[4] https://www.wildlifexteam.com/about/franchise-opportunities.html.

**Defendants are Joint Employers**

26. Defendants are joint employers pursuant to 29 C.F.R. § 791.2.

*The Hudson Defendants*

27. At all relevant times, Defendant D. Hudson and Defendant T. Hudson (collectively, the "Hudson Defendants") exerted operational control over Wildlife X Team and their franchises.

28. Specifically, the Hudson Defendants dictated (and continue to dictate) the practice goals and what pressing or tactical items needed to be done to meet the goals of Wildlife X Team and their clients.

29. Further, the Hudson Defendants dictated (and continue to dictate) control over the employment conditions of Wildlife X Team franchises and workers through requiring uniformity of operations in its franchised locations.

30. At all relevant times, the Hudson Defendants exerted operational control over Wildlife X Team and Wildlife X Team franchisees, to ensure its franchisees maintained the Wildlife X Team "model."

31. Indeed, the franchisees are "expected to operate the same way with their Wildlife X Team franchise."[5]

32. The Hudson Defendants dictated and enforced comprehensive and meticulous standards for marketing its trademarked brand and operating its Wildlife X Team franchises in a uniform way.

33. At all relevant times, the Hudson Defendants dictated and controlled how franchisee workers—Plaintiff and the Putative Class Members—perform services for customers and other terms and conditions of employment and administered policies and procedures.

---

[5] https://www.wildlifexteam.com/about/franchise-opportunities.html.

34. Further, the Hudson Defendants managed (and continue to manage) key internal relationships to Wildlife X Team—that is, they directed (and continue to direct) the financials of Wildlife X Team and they controlled (and continue to control) the franchise relationships.

35. The Hudson Defendants had (and continue to have) the power to hire and fire by virtue of the ability to terminate the franchise for failing to meet the standards of Wildlife X Team.

36. Upon information and belief, Wildlife X Team and its franchisees are a single integrated enterprise with a centralized, top-down operation controlled by the Hudson Defendants.

*37.* As a single integrated enterprise, Wildlife X Team offers and sells its Wildlife Management products and services directly and in conjunction with its franchisees.

*The Wildlife X Team Defendants*

38. Defendants X Team International and X Team (collectively, the "Wildlife X Team Defendants") have the rights to the franchised business(es), and delegate those rights to their franchisees to use through contractual agreements where Wildlife X Team retains control and oversight over the franchisees.

39. The Wildlife X Team Defendants exert operational control of its franchisee's employment conditions and acts directly or indirectly in the interest of its franchisee by creating and enforcing its business system.

40. The Wildlife X Team Defendants maintained (and continue to maintain) Plaintiff and the Putative Class Members' employment records reported from its franchisees.

41. The Wildlife X Team Defendants retain and assert operational control over its franchisee workers' employment and conditions of employment and asserts functional control in the context of its franchisor-franchisee relationships.

42. The Wildlife X Team Defendants permit Plaintiff and Putative Class Members' work by allowing Defendant Sayers, by and through Defendants Sayers Services and/or Sayware

Enterprises, doing business as Wildlife X Team Greater San Antonio, Wildlife X Team Houston, and Wildlife X Team Austin, to operate the franchises according to the specifications of Wildlife X Team.

43. The Wildlife X Team Defendants also suffer Plaintiff and Putative Class Members' work since Wildlife X Team has the power to prevent or restrict the work through agreements with its franchisees or policies it promulgates.

44. Plaintiff and Putative Class Members' workers are also economically dependent on the Wildlife X Team Defendants as their permission is needed for the continuation of the franchised business(es).

45. The Wildlife X Team Defendants develop common tools, procedures, rules and regulations, and forms/reports—including its "Exclusive Wildlife Inspection Report®"[6]—to be used by the Wildlife X Team franchises throughout the country.

46. The Wildlife X Team Defendants determine the key terms and conditions of Plaintiff and the Putative Class Members' daily work.

47. The Wildlife X Team Defendants develop and administer initial and ongoing training and job duties to Plaintiff and Putative Class Members.

48. The Wildlife X Team Defendants develop and administer their Operations Manual to Plaintiff and Putative Class Members.

49. The Wildlife X Team Defendants offer Best Practices Support from Wildlife X Team and from other franchisees.

50. The Wildlife X Team Defendants list all franchises on its central Wildlife X Team website.[7]

51. The Wildlife X Team Defendants maintain a national toll-tree telephone number.

---

[6] https://www.wildlifexteam.com/services/residential/exclusive-wildlife-inspection-report.html.

[7] https://www.wildlifexteam.com/find-a-location/.

52. The Wildlife X Team Defendants provide access to a national Wildlife X Team call center.

53. The Wildlife X Team Defendants provide company-wide coordination of advertising and lead-generation programs, and provides Wildlife X Team-approved computer systems.[8]

54. Upon information and belief, Wildlife X Team maintained supervision, control, oversight, and direction over Plaintiff and the Putative Class Members, including conditions of employment and promulgation and enforcement of policies affecting the payment of wages and overtime compensation. Indeed, Plaintiff and the Putative Class Members must obey and follow policies issued by Wildlife X Team or may be subject to termination by Wildlife X Team.

55. The unlawful acts alleged in this Complaint were committed by Wildlife X Team and/or Wildlife X Team's agents, officers, employees, or representatives, while actively engaging in the management of Wildlife X Team's business or affairs and with the authorization of Wildlife X Team.

***The Sayers Defendants***

56. Defendant Daniel Sayers owns and operates Wildlife X Team franchises in San Antonio, Austin, and Houston, Texas through his entities Sayers Services and/or Sayware Enterprises (collectively, and including Daniel Sayers, the "Sayers Defendants"), which are doing business as Wildlife X Team Greater San Antonio, Wildlife X Team Houston, Wildlife X Team Austin.

57. At all relevant times, Defendant Sayers has exerted operational control over Sayers Services and Sayware Enterprises doing business as Wildlife X Team Greater San Antonio, Wildlife X Team Houston, and Wildlife X Team Austin.

58. Further, Defendant Sayers managed (and continues to manage) key internal relationships to Sayers Services and Sayware Enterprises—that is, he directed (and continues to direct)

---

[8] https://www.wildlifexteam.com/about/franchise-opportunities.html.

the financials of Sayers Services and Sayware Enterprises and he controlled (and continues to control) the pay of Plaintiff and the Putative Class Members who directly or indirectly report to Defendant Sayers.

59. The Sayers Defendants had (and continue to have) the power to hire and fire Plaintiff and the Putative Class Members.

60. The Sayers Defendants had (and continue to have) the power to supervise and control Plaintiff and the Putative Class Members' work schedules and conditions of their employment within the guidelines developed, implemented, and enforced by the Wildlife X Team Defendants and the Hudson Defendants.

61. The Sayers Defendants had (and continue to have) the power to determine Plaintiff and the Putative Class Members' rate and method of payment within the guidelines developed, implemented, and enforced by the Wildlife X Team Defendants and the Hudson Defendants.

62. The Sayers Defendants maintained (and continue to maintain) Plaintiff and the Putative Class Members' employment records and, upon information and belief, report said employment records to the Wildlife X Team Defendants.

63. During the relevant period, Defendants individually and collectively have been Plaintiff and the Putative Class Members' employer under 29 U.S.C. § 203(d), which the Supreme Court has recognized as "'the broadest definition that has ever been included in any one act.'" *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (quoting 81 Cong. Rec. 7657).

64. Each Defendant, through its/his/her involvement in operating the aforementioned wildlife control company and its franchisees, has acted directly, or indirectly, in the interest of the employer with respect to Plaintiff and the Putative Class Members.

65. Defendants employed and/or jointly employed Plaintiff and the Putative Class Members.

66. As a result, all Defendants are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA, including the minimum wage and overtime provisions.

67. As a result, all Defendants are responsible, both individually and jointly, for compliance with all applicable provisions of the FLSA with respect to the entire employment for the workweeks at issue in this case.

**Plaintiff and the Putative Class Members Are Similarly Situated**

68. Plaintiff Monica Perez was employed by Defendants in San Antonio, Texas from approximately January 2021 until August 2021.

69. Defendants provide full-service wildlife control throughout the United States, including wildlife removal, trapping, relocation, and cleanup services.[9]

70. To provide their services, Defendants employ other individuals who perform(ed) the same or similar job duties under the same pay provisions as Plaintiff.

71. Plaintiff and the Putative Class Members are ***non-exempt*** employees who were misclassified as exempt from overtime and paid a day rate for each day worked, with no overtime compensation regardless of the number of hours worked each week.

72. Plaintiff and the Putative Class Members' primary job duties did not include making sales or obtaining orders or contracts for services.

73. Plaintiff and the Putative Class Members did not exercise independent discretion and/or judgment on matters of significance on behalf of Defendants.

74. Plaintiff and the Putative Class Members did not have authority to formulate, affect, interpret, or implement management policies or operating practices of Defendants.

---

[9] https://www.wildlifexteam.com.

75. Plaintiff and the Putative Class Members did not have the primary duty of performing office or non-manual work directly related to the management or general business operations of Defendants.

76. Plaintiff and the Putative Class Members did not customarily and regularly direct the work of two or more other full-time employees or their equivalent.

77. Indeed, Plaintiff and the Putative Class Members did not control or have authority over other employees' (or their own) work schedules, rates of compensation, or changes of employment status.

78. Plaintiff and the Putative Class Members did not have the authority to hire or fire other employees and his suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees were not given particular weight.

79. Plaintiff and the Putative Class Members did not utilize any special skills or training in the course of their work for Defendants.

80. Plaintiff and the Putative Class Members did not possess a specialized degree or certification that they utilized in the course of their work for Defendants.

81. The performance of manual labor and non-exempt duties occupied the majority of Plaintiff and the Putative Class Members' working hours.

82. Plaintiff and the Putative Class Members' primary job duties included assisting Defendants' customers with their wildlife removal and cleanup needs.

83. While exact job titles may differ, Plaintiff and the Putative Class Members were subjected to the same or similar illegal pay practices for similar work – that is, being paid a day rate and no overtime.

84. Plaintiff and the Putative Class Members typically worked in excess of forty (40) hours each workweek.

### Failure to Include Non-Discretionary Bonuses in Regular Rate

85. In addition to their day rate wages, Plaintiff and the Putative Class Members also received non-discretionary bonuses.

86. These non-discretionary bonuses were not included in Plaintiff and the Putative Class Member's regular rates of pay, thereby causing a miscalculation of the regular rate of pay for purposes of overtime compensation.

87. Specifically, Defendants paid out non-discretionary bonuses based on business and service quotas.

88. The non-discretionary bonuses paid to Plaintiff and the Putative Class Members were meant to encourage and motivate them to work harder and to reward them for their hard work.

89. The non-discretionary bonuses were based upon a pre-determined formula established by Defendants.

90. Moreover, specific criteria had to be met in order to receive these non-discretionary bonuses.

91. When Plaintiff and the Putative Class Members met the criteria, they were entitled to receive these non-discretionary bonuses.

92. Pursuant to 29 C.F.R. § 778.209, these non-discretionary bonuses (and any other non-discretionary compensation) should have been included in Plaintiff and the Putative Class Member's regular rates of pay before any and all overtime multipliers were applied.

### Defendants Violated the FLSA

93. Plaintiff and the Putative Class Members were not exempt from the overtime requirements of the FLSA by reason of any FLSA exemption.

94. Defendants paid (and continue to pay) Plaintiff and the Putative Class Members a day rate and no overtime.

95. That is, Plaintiff and the Putative Class Members did not get paid if they did not work.

96. The FLSA mandates that overtime be paid at one and one-half times an employee's regular rate of pay.

97. Defendants were (and continue to be) aware of their obligation to pay overtime for all hours worked in excess of forty (40) each week but have failed to do so.

98. Plaintiff and the Putative Class Members regularly worked in excess of forty (40) hours per week but never received overtime compensation.

99. Defendants denied Plaintiff and the Putative Class Members overtime pay as a result of a widely applicable, illegal pay practice.

100. Defendants applied this pay practice despite clear and controlling law that states Plaintiff and the Putative Class Members were (and are) Defendants' ***non-exempt*** employees entitled to overtime.

101. Because Defendants did not pay Plaintiff and the Putative Class Members overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek, Defendants' pay policies and practices violate the FLSA.

# V.
# CAUSE OF ACTION

**A.　FLSA COVERAGE**

102. All previous paragraphs are incorporated as though fully set forth herein.

103. The FLSA Collective is defined as:

**ALL INDIVIDUALS EMPLOYED BY OR WORKING ON BEHALF OF WIDLIFE X TEAM, ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM JANUARY 20, 2019 THROUGH THE FINAL DISPOSITION OF THIS MATTER, WHO WERE PAID A DAY RATE WITH NO OVERTIME. ("FLSA Collective" or "FLSA Collective Members").**

104. At all times hereinafter mentioned, Defendants have been joint employers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

105. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

106. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that those enterprises have had, and have, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

107. In performing the operations described hereinabove, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

108. Specifically, Plaintiff and the FLSA Collective Members are (or were) non-exempt employees of Defendants who assisted Defendants' customers who live throughout the United States. 29 U.S.C. § 203(j).

109. At all times hereinafter mentioned, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

110. In violating the FLSA, Defendants acted willfully, without a good faith basis, and with reckless disregard of applicable federal law.

111. The proposed collective of similarly situated employees, i.e. putative collective members sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 103.

112. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants.

## B. FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA

113. Defendants violated provisions of Sections 6, 7 and 15 of the FLSA, 29 U.S.C. §§ 206–07, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for hours worked in excess of forty (40) per workweek at rates at least one and one-half times the regular rates.

114. Plaintiff and the FLSA Collective Members have suffered damages and continue to suffer damages as a result of Defendants' acts or omissions as described herein; though Defendants are in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

115. Moreover, Defendants knowingly, willfully and in reckless disregard carried out the illegal pattern of failing to pay Plaintiff and other similarly situated employees overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

116. Defendants knew or should have known their pay practices were in violation of the FLSA.

117. Defendants are a sophisticated party and employer, and therefore knew (or should have known) its policies were in violation of the FLSA.

118. Plaintiff and the FLSA Collective Members, on the other hand, are (and were) unsophisticated laborers who trusted Defendants to pay overtime in accordance with the law.

119. The decision and practice by Defendants to not pay overtime compensation for all hours worked over forty (40) was neither reasonable nor in good faith.

120. Accordingly, Plaintiff and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

**C.   COLLECTIVE ACTION ALLEGATIONS**

121. All previous paragraphs are incorporated as though fully set forth herein.

122. Pursuant to 29 U.S.C. § 216(b), this collective claim is made on behalf of all of Defendants' employees who have been similarly situated to Plaintiff with regard to the work they performed and the manner in which they have not been paid.

123. Other similarly situated employees have been victimized by Defendants' patterns, practices, and policies, which are in willful violation of the FLSA.

124. The FLSA Collective Members are defined in Paragraph 103.

125. Defendants' failure to pay Plaintiff and the FLSA Collective Members overtime compensation at the rates required from the FLSA, results from generally applicable policies and practices of Defendants and does not depend on the personal circumstances of Plaintiff or the individual FLSA Collective Members.

126. Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

127. The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

128. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to overtime compensation for all hours worked in excess of forty (40) hours per workweek.

129. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

130. Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and Defendants will retain the proceeds of its rampant violations.

131. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

132. Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 103 and notice should be promptly sent.

## VI.
## RELIEF SOUGHT

133. Plaintiff respectfully prays for judgment against Defendants as follows:

    a. For an Order certifying the FLSA Collective as defined in Paragraph 103 and requiring Defendants to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

    b. For an Order approving the form and content of a notice to be sent to all putative FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

    c. For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiff (and those FLSA Collective Members who have joined in the suit), civil penalties, and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

d. For an Order awarding the costs and expenses of this action;

e. For an Order awarding attorneys' fees;

f. For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

g. For an Order awarding Plaintiff Perez a service award as permitted by law;

h. For an Order compelling the accounting of the books and records of Defendants, at Defendants' expense; and

i. For an Order granting such other and further relief as may be necessary and appropriate.

Date: January 20, 2022

Respectfully submitted,

**ANDERSON ALEXANDER, PLLC**

By: /s/ *Clif Alexander*
**Clif Alexander**
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson**
Texas Bar No. 24045189
austin@a2xlaw.com
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

*Counsel for Plaintiff and the Putative Class Members*